The STATE of Ohio, Appellee,

v.

MILLS, Appellant.

[Cite as *State v. Mills* (1991), 73 Ohio App.3d 27.]

Court of Appeals of Ohio,
Montgomery County.

Nos. 11722, 12151.

Decided April 11, 1991.

28

*Lee C. Falke,* Prosecuting Attorney, and *Lorine M. Reid,* Assistant Prosecuting Attorney, for appellee.

*Douglas A. Mills, pro se.*

WOLFF, Judge.

In two separate cases that were ultimately consolidated for trial, Douglas A. Mills was indicted on four counts of aggravated burglary, six counts of aggravated robbery, and one count of possessing criminal tools. Each of the burglary and robbery counts carried a firearm specification. A jury found Mills guilty on all counts, including the firearm specifications. After merging several of the convictions, the trial court sentenced Mills to serve five consecutive three-year mandatory terms for the five firearm specification convictions, consecutive to a twenty-one-and-one-half- to one-hundred-year term for the remaining convictions. It is from these judgments that Mills appeals.

Initially, Mills was represented on appeal by appointed counsel. However, after a dispute between Mills and his attorney, Mills moved for dismissal of counsel and for permission to proceed *pro se.* We originally denied the motion, but in a decision and entry rendered November 9, 1990, we allowed appointed counsel to be withdrawn. Even though counsel is no longer of record, we will consider the brief he filed on Mills's behalf, along with those briefs filed by Mills *pro se.*

Mills advances six assignments of error in these appeals. We have, however, consolidated and renumbered the assignments to facilitate a more organized presentation of our analysis.

"I. The Firearm enhancement was contrary to law in this case due to the states [*sic*] failure to prove the weapons [*sic*] operability."

█ Essentially, Mills argues that the evidence presented by the state was insufficient, as a matter of law, to support his convictions on the firearm specifications. We agree.

█ In order for a defendant to be convicted of a firearm specification pursuant to R.C. 2929.71, the state must prove beyond a reasonable doubt that the firearm[1] was operable or could readily have been rendered operable at the time of the offense. *State v. Gaines* (1989), 46 Ohio St.3d 65, 545 N.E.2d 68. Admission into evidence of the firearm allegedly employed in the crime is not necessary to establish the specification. Rather, the fact may be established

---

1. "Firearm" is defined in R.C. 2923.11(B) as any deadly weapon capable of expelling one or more projectiles by the action of an explosive or combustible propellant. Firearm includes an unloaded firearm, and any firearm which is inoperable but which can readily be rendered operable.

by circumstantial evidence, such as testimony as to gunshots, smell of gunpowder, bullets, or bullet holes, etc. *Id.* Proof necessary to convict under R.C. 2929.71 can also be established by the testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime. *State v. Murphy* (1990), 49 Ohio St.3d 206, 551 N.E.2d 932. Nevertheless, there must be some evidence relative to the gun's operability. *State v. Gaines, supra.*

In the case before us, there were five separate incidents in which Mills was involved that spawned his firearm specification convictions. We will address each episode individually.

On November 18, 1988, Mills and another individual forcibly entered the home of Antonia Gazetas in what was "supposed to be a cocaine robbery." Mills admitted, in an interview with a police investigator, that he was involved in the incident, and that a "gun" was used during the commission of the crime. Gazetas testified that "one guy came in and he had a gun and he had it in my head and he told me to '[t]urn around, don't say anything and you won't get hurt.'" Gazetas described the gun as being an "automatic gun * * * [a] handgun * * * [i]t was not a revolver." When Gazetas asked the man with the "gun" if he was going to shoot her, the individual responded that he "wasn't going to shoot [her] or rape [her] or any of that stuff if [she] was fine * * *."

On December 5, 1988, Mills gained entrance to Patricia Weaver's home under the pretense of looking for his missing dog. Once inside, Mills "pulled * * * a gun out of his jacket and * * * [slid] back something on the top of it." He then handcuffed Weaver and held her at gunpoint. Weaver heard the gun "clicking behind [her] back" and Mills said to her, "It's okay, the safety is off." At trial, Weaver described the gun as "a handgun." She testified that she saw "the top part * * * the barrel of it[,]" the part that Mills slid back. However, on cross-examination, Weaver admitted that she was not sure whether it was a "real gun or a play gun[,]" only that it was "kind of square looking."

On December 7, 1988, Mills entered a Fiesta Hair Salon and approached two employees sitting at a desk near the front of the store. The employees testified that Mills walked up to them with a newspaper covering his hands. When Mills pulled the newspaper away, the employees could see that he was holding a gun. Mills "cocked" the gun, pointed it at the employees, and told them to move into the back room of the salon. One employee, Karen Brooks, testified that the gun was "[d]ark gray," and that "[i]t was a hand gun— pistol" without a cylinder. Brooks further testified that when Mills "cocked" the gun, "[h]e pulled it to the back and made a clicking noise and he let it go."

The other employee, Denise Dalton, testified that the gun was "[f]ive to eight inches long * * * dark gray in color * * * [and when] [h]e pulled something up on it * * * it made a sliding noise."

On December 9, 1988, Mills, dressed as a sheriff's deputy, knocked on the front door of Rhonda Miller's apartment. He told Miller that he was "looking for [her] next door neighbor, Mr. Peterson," and that he "wanted to ask him a couple questions." When Mills discovered that Peterson was not home, he left Miller's apartment. Shortly thereafter, Miller answered another knock at her apartment door. When she opened the door, Miller saw a different "gentleman standing there in a ski mask with a gun." Miller testified that the "barrel [of the gun] was chrome with a wooden handle. It wasn't a revolver, it loaded up the handle." The man then pushed his way into the apartment, held the gun to Miller's head, ordered her about as he looked for money and jewelry, and "cocked the gun" when Miller turned to look at him.

The fifth incident also occurred on December 9, 1988. Mills, again outfitted as a sheriff's deputy, knocked on the door of Madeline Meyer's residence and told her that he needed to check the house because "someone had been messing around with the back porch." Meyer permitted Mills to enter, and he proceeded to look around the rooms on the first floor as well as in the basement. Approximately ten minutes after Mills left, Meyer heard a sound in the basement. She immediately left the house and ran across the street. As Meyer looked back, she saw an individual with a build similar to that of Mills coming out of her residence. Meyer testified that the individual was carrying "a gun," a small, automatic handgun that was straight across the top.

On direct examination, Mills testified that he had participated in all five of these crimes, and that "the same gun [was used] in all the robberies." Mills described the gun as a .45 caliber Marksman Repeater BB gun.

Based upon this record, we conclude that the state failed to prove beyond a reasonable doubt that a "firearm" was used in these crimes and that such firearm was operable or could readily have been rendered operable at the time of the offense. Although the state called several witnesses who testified that a "gun" was used in each of these offenses, none of the evidence indicated, even circumstantially, that the gun used during the offenses was a "firearm" as defined in R.C. 2923.11(B).

There was no testimony as to gunshots, smell of gunpowder, bullets, or bullet holes. See *State v. Gaines, supra.* Moreover, none of the state's eyewitnesses was so familiar with firearms that she could identify the specific type of gun used in the offenses, as could the witnesses in *State v. Murphy, supra,* who were able to identify the weapon as a "one- or two-shot chrome

derringer." Finally, there is no evidence that Mills or his accomplice threatened any of the victims with being shot or killed if they did not cooperate. *State v. Murphy, supra.*

We conclude, based upon the foregoing, that the state's evidence was insufficient, as a matter of law, to support Mills's convictions on the firearm specifications.

Mills's first assignment of error is sustained.

"II.  The appellant was entitled to a directed verdict of acquittal when the court deleted the essential element to wit:  deadly weapon from the indictment."

At issue in this assignment is the specific wording of the firearm specification charges brought against Mills.  Each specification provided "that while committing the aforesaid offense, DOUGLAS A. MILLS had on or about his person or under his control *a deadly weapon, to wit:  a firearm;* contrary to the form of the statute (in violation of Sections 2929.71 and 2941.141 of the Ohio Revised Code) * * *."  (Emphasis added.)  Prior to trial, defense counsel argued that the firearm specifications were tainted and should have been dismissed because they included the term "deadly weapon."  Counsel stated that it was unclear whether the grand jury intended to include a "firearm" specification or a "deadly weapon" specification, the latter of which does not exist under the Revised Code.

In order to "solve the whole problem," the trial court amended the firearm specifications by deleting the words "deadly weapon, to wit:" so that the specifications read "had on or about the person or under his control a firearm."  Mills argues that the trial court's amendment to the firearm specifications was reversible error.  We do not agree.

The inclusion of the term "deadly weapon" in the firearm specifications, as well as its subsequent deletion, was not improper.  R.C. 2923.11(B) defines "firearm" as a *deadly weapon* capable of expelling projectiles by the action of an explosive.  Therefore, as it related to the firearm specifications, use of the phrase "deadly weapon" was surplusage because "deadly weapon" is included in the definition of "firearm."  We must presume that the grand jury was cognizant of the definition of "firearm."  Based upon the foregoing, it is our conclusion that the deletion of the words "deadly weapon" from the specifications did not prejudice Mills in any way, nor did it amount to reversible error.

Mills's second assignment of error is overruled.

"III.  The trial court abused it's [*sic*] discretion in denying the appellant's motion for new trial after appellant met the four corner test required to grant a new trial."

In February 1990, Mills filed a motion for new trial "based on newly discovered evidence and error of law, which the Defendant * * * could not with reasonable diligence, have discovered and produced at the trial * * *." The "newly discovered evidence" offered by Mills was the Ohio Supreme Court's decision in *State v. Gaines, supra.* Mills's motion was overruled in a decision filed by the trial court on March 8, 1990. Mills asserts that that decision was error. We disagree. The "newly discovered evidence" presented by Mills was not evidence at all, but was an opinion rendered by the Ohio Supreme Court concerning the evidentiary basis necessary to require additional incarceration under the firearm specification statute. Therefore, it was not error for the trial court to have overruled his motion. The question as to whether the state's evidence was sufficient to prove the firearm specification charges is an issue to be asserted on appeal. (See Mills's first assignment.)

Mills's third assignment of error is overruled.

"IV. The firearm instruction 'impermissably [*sic*] shifted' the burden of proof to the appellant to prove the inoperability of the weapon at trial."

Mills contends that the prosecution made an improper statement in his closing argument, and that the trial court's instructions on "deadly weapon" and "firearm" shifted the burden of proof to the defense. We do not find these arguments persuasive.

Mills challenges the prosecutor's statement to the jurors in summation that "even if you assume and you agree that this defendant used that BB gun during the commission of those offenses, he is guilty of aggravated robbery." Our review of the transcript indicates that no objection was made at trial to preserve this argument for appeal. However, even if the alleged error had been preserved, we conclude that the prosecutor's statement was not improper or prejudicial. While a BB gun does not fall within the purview of a "firearm," it may constitute a deadly weapon, and if a defendant uses a BB gun in the commission of a theft offense, he or she may be convicted of aggravated robbery. See *State v. Gaines, supra,* 46 Ohio St.3d at 68, 545 N.E.2d at 71.

With regard to his argument on the jury instructions, Mills essentially contends that the court's instructions on "deadly weapon" and "firearm" shifted the burden of proof to the defense to prove "inoperability" of the gun used during the commission of the offenses. We do not agree. The trial court instructed the jurors that a deadly weapon means "any instrument, device or thing capable of inflicting a death and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." The court further instructed the jurors that firearm means:

" * * * any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. A firearm includes an unloaded firearm and any firearm which is inoperable but which can readily be rendered operable.

"The State must prove beyond a reasonable doubt that the instrument used was a firearm. It is not necessary that the State produce the actual weapon. A BB gun is not a firearm."

These instructions track the language of the applicable statutes and case law almost verbatim. Moreover, the trial court indicated that the *state* had the burden of proof in this case. Based upon this record, the trial court's instructions to the jury were not improper.

Mills's fourth assignment of error is overruled.

"V. The firearm specification discriminates against the appellant in violation of the United States Constitution's Fourteenth Amendment's Equal Protection Clause."

█ Mills argues that Ohio's firearm specification statute is unconstitutional because it "creates a separate class of persons who alone are subject to a three-year enhancement for possession of a firearm, during the commission of a felony." Mills also argues that the state improperly uses firearm specification charges as "tool(s) for obtaining guilty pleas."

Because Mills's equal protection argument does not involve either fundamental rights or suspect classifications, it follows that the general rule of minimum judicial scrutiny will be applied. *York v. Dayton* (Dec. 29, 1988), Montgomery App. No. 10953, unreported, 1988 WL 142391. The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. *Cleburne v. Cleburne Living Ctr.* (1985), 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313.

R.C. 2929.71 requires the court to impose a three-year term of actual incarceration on an offender who: (1) is convicted of or pleads guilty to any felony other than a violation of R.C. 2923.12, and (2) is also convicted of or pleads guilty to a specification charging him with having a firearm on or about his person or under his control while committing the felony. The apparent purpose of this statute is to reduce criminal activity involving firearm use and to reduce the injuries and deaths occurring as a result of criminal activity involving firearm use. In our view, classifying offenders using firearms in felonies as deserving of harsher punishment bears a rational relationship to a legitimate state interest.

■ Mills's claim that prosecutors use firearm specifications as bargaining chips cannot be raised on appeal. That argument necessarily involves evidence that is outside the appellate record.

Mills's fifth assignment of error is overruled.

"VI. The appellant's right's [sic] under the Sixth Amendment were violated during the trial due to trial counsel's ineffectiveness."

■ Mills contends that he was deprived of the effective assistance of counsel because his trial attorney: (1) informed the jury during his opening statement that the defense did not dispute the vast majority of facts that would be presented in the case, and (2) did not make a Crim.R. 29 motion for judgment of acquittal after two of the state's witnesses failed to identify him as the perpetrator of the alleged criminal activity.

In *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, the Supreme Court of the United States held that a defendant's claim of ineffective assistance of counsel has two components:

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

In applying the *Strickland* holding to the case before us, we cannot conclude that Mills was deprived of the effective assistance of counsel. First, counsel's concession that the defense would not challenge the vast majority of facts was true and therefore simply not "deficient." Second, counsel's failure to move for dismissal pursuant to Crim.R. 29 was not improper in light of the evidence presented in the state's case-in-chief linking Mills to all of the criminal activities of which he was accused.

Mills's sixth assignment of error is overruled.

His first assignment of error having been sustained, Mills's convictions and sentences on the firearm specifications will be reversed. The remainder of Mills's sentences and convictions will be affirmed.

*Judgment affirmed in part
and reversed in part.*

FAIN, P.J., and WILSON, J., concur.