The STATE of Ohio, Appellee,

v.

BUTLER, Appellant.

[Cite as *State v. Butler* (1994), 97 Ohio App.3d 322.]

Court of Appeals of Ohio,
Franklin County.

No. 94APA01–75.

Decided Sept. 13, 1994.

*Michael Miller*, Franklin County Prosecuting Attorney, and *Susan E. Day*, Assistant Prosecuting Attorney, for appellee.

*Judith M. Stevenson,* Franklin County Public Defender, and *Paul Skendelas,* Assistant Public Defender, for appellant.

PETREE, Judge.

Defendant-appellant, Sherman J. Butler, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of aggravated robbery, in violation of R.C. 2911.01, with a specification that the offense was committed with a firearm; robbery, in violation of R.C. 2911.02; and theft, in violation of R.C. 2913.02.

Defendant sets forth the following assignments of error:

"I. The trial court erred in overruling appellant's motion to suppress identification as the identification procedure was so unnecessarily suggestive and conducive to irreparable mistake as to deny appellant due process of law.

"II. The trial court erred in denying appellant's request for a continuance following the discharge of defense counsel in violation of appellant's constitutional guarantees of due process and fundamental fairness.

"III. There was insufficient evidence to support a finding that appellant possessed a firearm as defined in R.C. 2923.11.

"IV. Appellant's conviction was not supported by sufficient credible evidence and was against the manifest weight of the evidence. This denied appellant * * * a fair trial and due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution."

On February 20, 1993, Jennifer Armstrong and Constance Brooks were working at the White Castle restaurant on Morse Road in Columbus. Armstrong was working the counter register and Brooks was working the drive-thru window. According to Armstrong, at approximately 12:00 a.m., a man approached the counter, asked her the price of a double cheeseburger, and then left. Moments later, the same man returned accompanied by a second man who produced a small handgun. Armstrong described the weapon as a small, old-looking revolver with the end scraped, but stated she could not see the handle of the weapon, since it was covered by the robber's hand. The first man demanded the money from Armstrong's register and then demanded the money from Brooks' register. Armstrong and Brooks complied with the first man's request and the two men left the restaurant.

Columbus police officers responding to the robbery took statements from the victims and obtained a description of the perpetrators. Armstrong described the first man as six foot one and one hundred eighty pounds, with a mustache, facial

hair and wearing a red and orange hat, blue pants with multicolored checks, a dark shirt and a dark jacket.

Approximately twelve hours after the robbery, Columbus Police Officer Larry Reese arrested defendant on unrelated charges at a location approximately one mile from the White Castle restaurant. When Reese returned to the police station with defendant, he became aware of the White Castle robbery. Because defendant fit the description given by Armstrong, Reese contacted Detective John Sears of the robbery squad. Sears took several polaroid photographs of defendant and used those photos, along with the description given by the victims, to compile a photo array.

Jennifer Armstrong arrived at the police station around noon on February 20, 1993 for an interview. Sears presented Armstrong with the photos he had taken of defendant. As he showed her the photos, Sears covered the upper torso with a piece of paper so that Armstrong could see only the lower torso and legs of defendant. Armstrong recognized the multicolored jeans worn by the individual in the photographs and stated they were the same type worn by the robber. Armstrong was then presented with the photo array. She selected defendant's photograph from among the six photos in the array, and stated that she was around eighty percent sure that defendant was the man who robbed the White Castle restaurant.

On February 28, 1993, Columbus Police Detective Harry Van Fossen visited the White Castle restaurant to interview Constance Brooks. When Van Fossen entered the restaurant, he was approached by Jennifer Armstrong, who stated that she was now one hundred percent sure that the man she had identified in the photo array was the same man who had robbed the restaurant on February 20. Van Fossen then proceeded to show the photo array to Constance Brooks. Brooks immediately selected defendant's picture from the array and stated that she was one hundred percent sure that defendant was the man who robbed the White Castle restaurant.

In defendant's first assignment of error, defendant contends that the trial court erred in denying his motion to suppress the pretrial identification made by Jennifer Armstrong. We disagree.

Convictions based on eyewitness identification will be set aside only if the identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States* (1968), 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253. The photo array in the record contains six black and white photographs of black males of the same age group, with similar builds, facial structures and facial hair to that of defendant. The photographs show only the upper torso of the men and very

little clothing. Our review of the photo array reveals nothing outstanding about defendant's photograph; the individuals depicted are all very similar.

Nevertheless, defendant contends that the photo array was unnecessarily suggestive in that the other individuals depicted in the array appear to be wearing slate cards around their necks, whereas defendant was not. We note that only four of the six individuals in the photo array appear to be wearing slate cards. Additionally, the slate cards themselves are not visible in the photo array; only the chain is visible. Moreover, the presence of slate cards on some of the other individuals in the array does not necessarily suggest that they were incarcerated at the time of the offense as defendant now contends.

■ Defendant also contends that the procedure employed by the police was unnecessarily suggestive in that Jennifer Armstrong was permitted to view a photograph of defendant's clothing prior to seeing the photo array and could have easily identified defendant by matching the clothing. However, the photo array from which Armstrong selected defendant displayed only the upper torso of defendant. Defendant's rather distinctive multicolored jeans were not visible in the array and the hood from defendant's sweatshirt was barely visible. Additionally, we note that Constance Brooks identified defendant from the same photo array without having previously seen pictures of defendant's clothing. Constance Brooks was one hundred percent certain that defendant was the person who robbed the White Castle restaurant.

■ Even if we were to accept defendant's contention that the photo array was unnecessarily suggestive, other factors affecting the reliability of identification testimony include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal * * * and the length of time between the crime and the confrontation." *Neil v. Biggers* (1972), 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411. Armstrong's pretrial identification is enhanced by her opportunity to view the perpetrator at close range, the short time period between the commission of the crime and the identification and Constance Brooks' identification of defendant from the same photo array. Given these other indicia of reliability, we cannot say that the suggestiveness of the photo array, if any, created a substantial likelihood of misidentification. Consequently, the trial court did not err when it denied defendant's motion to suppress Armstrong's pretrial identification of defendant.

Defendant's first assignment of error is overruled.

In defendant's second assignment of error, defendant contends that the trial court erred by denying his request for a continuance of trial following the withdrawal of his defense counsel. We disagree.

The decision to grant or deny a motion to continue trial is a matter within the discretion of the trial judge. *State v. Unger* (1981), 67 Ohio St.2d 65, 21 O.O.3d 41, 423 N.E.2d 1078. An abuse of discretion connotes more than error of law or judgment, it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. *State v. Powell* (1990), 49 Ohio St.3d 255, 260, 552 N.E.2d 191, 197.

During proceedings on defendant's motion to suppress, defense counsel moved to withdraw from the case on the grounds that defendant had expressed a displeasure with counsel's representation. Thereafter, the following exchange took place:

"THE COURT: Mr. Butler, are you prepared to go forward today and continue to represent yourself or do you wish the court to go forward and appoint you new counsel that you feel could, perhaps, establish a better working relationship with?

"THE DEFENDANT: If possible, if the court can appoint me Geoffrey Bobbitt today, if possible, I could go and represent myself through the hearings that we are having now. But as far as trial, I would like the court to appoint me an attorney.

"THE COURT: Well, you either have a choice to go forward with an attorney or to go forward completely on your own. The court is uncomfortable doing both because you may do something Mr. Bobbitt would be very uncomfortable with in terms of hearings that he might feel would jeopardize your case. Is that what you wish to do, or do you prefer Mr. Bobbitt to pick up fresh so he can counsel with you at every stage along the * * * way? Perhaps you could talk to Mr. Erlenbach briefly and confer.

"THE DEFENDANT: Is there any way that I can postpone making this decision until tomorrow morning, until I can get on the telephone and make a few calls?

"THE COURT: No, we need to make a decision today, unless you want to waive time until tomorrow morning, but I think we need to make the decision today as to whether we will—first of all, I will allow your counsel to withdraw because it is obvious to the court that there is some serious problems that have developed between you and counsel, but I need to make an appointment today as to counsel to represent you. We need to make the decision today.

"THE DEFENDANT: I think I will go on and try to represent myself, as far as this situation. I think I will try that.

"MR. ERLENBACH: The whole trial?

"THE DEFENDANT: If it's a mistake, then it's one that I have to pay for."

We note that the court carefully and fully advised defendant of the maximum penalties he could receive if convicted on all counts, and the risks associated with self-representation. Thereafter, the trial court offered defendant the option to obtain court-appointed counsel, whereupon, the following exchange took place:

"THE COURT: I want to be sure then that you feel you understand, that you fully understand the risks that you are taking in proceeding with this trial on your own representation. Do you feel you fully understand those risks and liabilities?

"THE DEFENDANT: Yes, I do, your Honor.

"THE COURT: Do you understand that this court has appointed counsel and will be willing to give you a reasonable continuance *for that counsel to become acquainted with your case and be fully ready to present and defend you in this matter?* Are you aware of that?

"THE DEFENDANT: Yes, I am." (Emphasis added.)

 Defendant continued to represent himself in proceedings on pretrial motions and successfully argued a motion to separate several counts of the indictment for trial. However, prior to the impanelling of the jury, defendant moved for a two-week continuance of trial for the purpose of trial preparation. The trial court advised defendant that a continuance would be granted only if defendant employed court-appointed counsel, but if defendant intended to represent himself no continuance would be granted.

Defendant contends that the trial court erred by unfairly conditioning a continuance of trial upon defendant's agreement to terminate his self-representation. We disagree.

In determining whether the trial court has abused its discretion in failing to grant a continuance of trial, the court must examine all the surrounding circumstances, with particular emphasis on the reasons presented to the trial judge at the time the request is denied. *Powell, supra,* 49 Ohio St.3d at 259, 552 N.E.2d at 196–197. Defendant had previously represented to the court that he was prepared to represent himself and that he was ready to go to trial on the date and time originally scheduled. The trial court in this instance recognized that an eleventh-hour decision to employ counsel would necessarily result in a change of circumstances sufficient to justify a continuance for "that counsel to become acquainted with [the] case." However, if defendant continued to represent himself, no additional time would be needed. Clearly, the trial court's ruling was

based on an objective assessment of all of the surrounding circumstances; the ruling was neither arbitrary nor capricious.

■ Moreover, even if the trial court had erred by denying defendant's motion for a continuance, defendant has not directed this court's attention to any instance where his self-representation was ineffective. Consequently, defendant has not demonstrated any prejudice resulting from the alleged error.

Defendant's second assignment of error is overruled.

In defendant's third assignment of error, defendant contends that the prosecution presented insufficient evidence to support his conviction of a firearm specification. We agree.

Under R.C. 2929.71(A), the trial court must impose an additional term of three years if the defendant had a "firearm" in his possession while committing the offense. The term "firearm" is defined in R.C. 2923.11(B) as any deadly weapon capable of propelling or expelling a projectile.

In *State v. Gaines* (1989), 46 Ohio St.3d 65, 545 N.E.2d 68, the Ohio Supreme Court held that the prosecution's burden of proof on the issue of operability can be met through the presentation of circumstantial evidence:

" * * * Admission into evidence of the firearm allegedly employed in the crime is not necessary to establish the specification. Rather, the fact may be established by circumstantial evidence (testimony as to gunshots, smell of gunpowder, bullets or bullet holes, etc.). Nevertheless, there must be some evidence relative to the gun's operability. * * * " *Id.* at 69, 545 N.E.2d at 71–72.

In *Gaines, supra,* the only evidence presented by the state regarding operability consisted of the testimony of lay witnesses as to the appearance of the gun and their subjective belief that the gun was operable. The Supreme Court concluded that this evidence was insufficient to satisfy the state's burden of proof on the issue of operability. *Id.*

The *Gaines* decision was subsequently modified in *State v. Murphy* (1990), 49 Ohio St.3d 206, 551 N.E.2d 932, wherein the court held that operability could be "established beyond a reasonable doubt by the testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime." *Id.* at 209, 551 N.E.2d at 935. In *Murphy,* two eyewitnesses to a convenience store robbery testified that the defendant removed a one- or two-shot silver or chrome derringer from his pants, pointed it at the clerk and announced that, if the clerk did not give him the money, he would kill him. *Id.* at 208, 551 N.E.2d at 934–935. The court held that this testimony was sufficient to establish operability beyond a reasonable doubt. *Id.*

In the present case, the only testimony regarding operability was that of the victims. Armstrong testified that defendant approached the counter and demanded money from the register while a second man pointed a gun at her. Armstrong admitted that no threats were uttered by either the defendant or his accomplice. Armstrong described the gun as a small, old-looking revolver with the end scraped; she stated that there was no doubt in her mind that the gun was real. Brooks testified that she saw the second man holding the gun on Armstrong in a threatening manner, that the gun appeared to be a real gun and that she treated it as a real gun. There is no indication in the record that Armstrong or Brooks had any experience with firearms.

In *State v. Mills* (1991), 73 Ohio App.3d 27, 595 N.E.2d 1045, the Montgomery County Court of Appeals, applying *Gaines* and *Murphy,* overturned convictions of firearm specifications which were based on the testimony of several eyewitnesses who described what they believed was an operable gun used in the commission of several theft offenses. In so doing, the court noted that the assailants did not threaten any of the victims with being shot or killed. *Id.* at 32, 595 N.E.2d at 1048–1049. The court also noted the fact that the witnesses were unfamiliar with firearms. *Id.* at 31, 595 N.E.2d at 1047–1048.

Applying R.C. 2929.71(A) as interpreted by the court in *Gaines* and *Murphy* to the facts of this case, we find that the prosecution failed to meet its burden of proof with respect to the firearm specification. We hold that evidence of an implied threat of bodily injury or death and an eyewitness description of a gun is insufficient to establish operability, where the eyewitness has no knowledge of firearms. *Mills, supra.* Under the circumstances, Jennifer Armstrong's description of the gun as a small, old-looking revolver with the end scraped does not give rise to an inference of operability, beyond a reasonable doubt. Cf. *State v. Reynolds* (July 8, 1993), Cuyahoga App. No. 63025, unreported, 1993 WL 259574 (nonverbal threats combined with an eyewitness description of the gun are sufficient to establish operability, where the victims are familiar with firearms).

We acknowledge that other appellate districts have upheld convictions of firearm specifications under similar circumstances to those presented herein. See, *e.g., State v. Young* (May 26, 1993), Summit App. No. 15927, unreported, 1993 WL 175525; *State v. Milteer* (Oct. 7, 1992), Richland App. No. CA–2914, unreported, 1992 WL 274730. However, if the prosecution feels that an actual conflict exists between the judgment entries in these cases and our decision and the judgment entry in this case, it is free to move for certification of this case to the Ohio Supreme Court.

Defendant's third assignment of error is sustained.

In defendant's fourth assignment of error, defendant contends that his conviction of aggravated robbery was not supported by sufficient credible evidence and was against the manifest weight of the evidence. We disagree.

In *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review to be applied by the court upon the contention that a criminal conviction is against the manifest weight of the evidence:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* at paragraph two of the syllabus.

The testimony of the two victims, if believed, provides sufficient evidence upon which a reasonable jury could find defendant guilty of aggravated robbery. However, defendant contends that the witnesses' identifications were unreliable in light of the unfairly suggestive photo array; the fact that he does not fit the witnesses' initial description of the robber; and, the fact that the victims were fellow employees and came from the same region in West Virginia.

With respect to the witness identification, we have previously ruled that the photo array presented to both Armstrong and Brooks was not unnecessarily suggestive. Moreover, Armstrong testified at trial that, approximately twelve days after the incident, she informed Detective Van Fossen that she was one hundred percent sure that defendant was the man who robbed the White Castle restaurant. Armstrong also made a positive in-court identification of defendant as the man who robbed the White Castle restaurant. Additionally, Constance Brooks selected defendant's photo from the photo array without hesitation and stated that she was one hundred percent sure that defendant was the man who robbed the White Castle restaurant. Brooks also made a positive in-court identification of defendant.

With respect to the initial description of the assailant given to police, we find the victim's failure to specifically state that the robber had a goatee is inconsequential in light of the fact that both witnesses described the robber as not being clean shaven. Moreover, Detective Sears testified that the photo array from which defendant was identified was compiled with the aid of the description given by the victims.

With respect to defendant's contention that the victims' testimony was influenced by their close personal relationship, we note that the testimony indicates only that the two victims were coemployees of the White Castle restaurant and came from the same region in West Virginia. Although both victims testified that they had known of each other while in West Virginia, they had never met prior to their employment at White Castle. In short, we cannot say that the jury lost its way in choosing to believe the testimony of the victims.

Finally, defendant concedes that his "alibi" witnesses could not place him away from the scene of the robbery at the time it occurred.

Viewing the evidence in a light most favorable to the prosecution, we find sufficient, competent and credible evidence in the record which, if believed, could convince the average mind of defendant's guilt beyond a reasonable doubt. Accordingly, defendant's conviction will not be reversed by this court as being against the manifest weight of the evidence.

Defendant's fourth assignment of error is overruled.

Having overruled defendant's first, second and fourth assignments of error, but having sustained defendant's third assignment of error, we hereby reverse the judgment of the Franklin County Court of Common Pleas with respect to defendant's conviction of the firearm specification and affirm the judgment in all other respects. Accordingly, this case is remanded to the Franklin County Court of Common Pleas for further proceedings consistent herewith.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

PEGGY BRYANT and CLOSE, JJ., concur.