DECISION
Defendant-appellant, James C. Fisher, was tried and convicted by a jury on three counts: (1) receiving stolen property, a violation of R.C.2913.51; (2) aggravated burglary, a violation of R.C. 2911.11; and (3) involuntary manslaughter, a violation of R.C. 2903.04. For the reasons that follow, we reverse and remand.
According to the state's theory of this case, during the early morning hours of December 10, 1998, Fisher and Joseph Snelling[1] broke into an apartment complex garage in an effort to steal a car. Their plan was foiled, however, by a private security guard. The state argued that, after this unsuccessful attempt, Fisher and Snelling moved their efforts about a mile down the road and stole a red Cavalier. The state alleged that, on December 11, 1998, Fisher and Snelling drove the stolen Cavalier to the Barrington Square apartment complex. According to the state, Fisher and Snelling were in the process of burglarizing the unit where Pamela Furlong and her daughter lived when Furlong returned from an errand and interrupted the crime. Furlong chased Fisher and Snelling into the parking lot, where the two men hopped into the red Cavalier. Fisher was alleged to be driving the car and he struck Furlong. Furlong died from the injuries.
At trial, the state offered the following evidence. Security Guard Arnold Broyles testified that he was on routine patrol on December 10, 1998, at the Olentangy Village apartment complex in Clintonville. At 1:00 a.m., Broyles discovered Fisher and Snelling inside a garage unit. They admitted that they did not live in the complex. Broyles testified that, while he was questioning the men, Fisher ran away. Snelling was questioned by the police and released from the scene.
Jodi Senser testified that, on December 10, 1998, at 10:45 a.m., she discovered that her red Chevy Cavalier was missing from the parking lot of her apartment building. The state provided evidence that Senser's apartment building was less than one mile from the Olentangy Village apartments where Fisher and Snelling had been discovered by the security guard.
Columbus Police Officer Trent Taylor testified that, on December 15, 1998, he found the red Cavalier parked adjacent to the Hickory Creek apartment complex. Senser identified the recovered car. She testified that the car had fresh damage, including a dent on the passenger side door toward the front headlight, a crack in the headlight and scrapes.
Monica Swint, Ann-Marie Tonneman and Joy Tonneman testified that, on December 11, 1998, at 11:00 a.m., they were leaving an apartment in the Barrington Square apartment complex. Ann-Marie Tonneman was the first out the door. As she exited the apartment, she saw two white men run and get into a red car. She testified that the driver was about six feet tall and in his mid- to late-twenties, although she admitted that she did not see his face. Ann-Marie Tonneman next heard squealing tires and a big thump. She saw a woman laying on the ground. She testified that the car was consistent in color with Jodi Senser's red Cavalier. She also testified that a plaid tan winter coat that belonged to Fisher looked similar to the winter coat worn by the driver of the red car.
Joy Tonneman testified that she was in the process of locking the apartment door when she heard squealing tires and saw a red car leaving the scene. She testified that the car could have been Senser's Cavalier.
Monica Swint testified that she was walking into the parking area while the two occupants were driving off in the red car. She testified that she made eye contact for a brief moment with the driver as the car drove past her at a high rate of speed. Swint testified that she was "pretty certain" that Fisher was the driver of the car. (Tr. at 373.)
Columbus Police Officer James Edbrooke testified that, when he arrived at the scene, he discovered that the door to Pamela Furlong's apartment was open. He noticed that the basement window near the back patio had been broken. Based on his observations, he concluded that Furlong's apartment had been burglarized. Detective James McCoskey also testified that the interior of the apartment had been ransacked. Furlong's seventeen-year-old daughter, Aubrey Furlong, confirmed that drawers and jewelry boxes had been open and items had been strewn about the apartment some time after she had left for school earlier that morning.
Detective Robert Barrett testified that he examined tire marks allegedly made by the red car that struck Furlong. He opined that the tread and width of the tire marks from the crime scene were consistent with the front tires of Senser's red Cavalier. He testified that the bruises on the front of Furlong's legs could have been made by her legs striking the spoiler on the Cavalier. Deputy Coroner Keith Norton also testified that the bruises on Furlong's lower front legs were consistent with having been struck by a car.
Detective Patrick Dorn testified that he determined that Fisher's half brother resided at 1587 Harvester Lane, which is "355 paces" from where the police found Senser's red Cavalier. (Tr. at 486.)
Finally, the state called Lark Parker, a pawn shop owner, who testified that, on four occasions in November 1998, he paid Fisher and Snelling for jewelry and silver coins.
On appeal, Fisher raises the following assignments of error:
First Assignment of Error
 Appellant's right to due process of law under the Fourteenth Amendment to the United States Constitution was violated by the denial of his motions for judgment of acquittal under Crim. R. 29 and by verdicts of guilty not supported by sufficient evidence and against the manifest weight of the evidence.
 Second Assignment of Error
 Appellant's right to due process of law and a fair trial under the Fourteenth Amendment to the United States Constitution was violated by the admission of the testimony of Lark Parker that Appellant and sold jewelry, watches, and old coins to him on several occasions prior to the incident for which appellant was charged, improperly inviting the jury to infer from this evidence of "other acts" that Appellant had a propensity to commit burglary for jewelry in this case.
 Third Assignment of Error
 Appellant's right to due process of law and a fair trial under the Fourteenth Amendment to the United States Constitution was violated by the admission of the testimony of Arnold Broyles that Appellant had trespassed in an apartment complex garage, improperly inviting the jury to infer from this evidence of "other acts" that Appellant was connected with the theft of an automobile stolen about a mile away from that apartment complex around the same time period.
 Fourth Assignment of Error
 Appellant's right to due process of law and a fair trial under the Fourteenth Amendment to the United States Constitution, his right to confrontation under the Sixth Amendment to the United States Constitution, and his right to the effective assistance of counsel under the Sixth Amendment to the United States Constitution were violated by the failure of the trial court to give curative or limiting instructions or to declare a mistrial when the trial court refused to allow the prosecutor to call Misty Cantor as its main witness when it became known that she had recanted her incriminating statements against Appellant and would invoke her Fifth Amendment Right against self-incrimination if called to testify, when in opening statements the prosecutor told the jury that Misty Cantor would testify that Appellant and his co-defendant had confessed to committing the offenses for which he was charged and that they drove the stolen car allegedly used in the offense.
 Fifth Assignment of Error
 Appellant's right to due process of law and a fair trial under the Fourteenth Amendment to the United States Constitution was violated by the admission of the in-court identification of Appellant by Monica Swint when it was obviously suggestive to ask the witness to identify the perpetrator when it was clear who the defendant was and when the witness' view of the perpetrator was so fleeting that she was unable to provide police with a description of the perpetrator at the time of the offense.
 Sixth Assignment of Error
 Appellant's right to due process of law and a fair trial under the Fourteenth Amendment to the United States Constitution, and his right to the effective assistance of counsel under the Sixth Amendment to the United States Constitution, were violated by the admission, without objection from defense counsel, of victim impact evidence through the testimony of the victim's mother, Caroline Pierson, and her daughter, Aubrey Furlong.
For purposes of clarity, we address Fisher's assignments of error out of order.
In his fifth assignment of error, Fisher argues that Monica Swint's in-court identification was so suggestive and unreliable that it violated Fisher's right to due process. We disagree.
As part of its case-in-chief, the state called Ann-Marie and Joy Tonneman, and Monica Swint, the three women who were in the parking lot when Furlong was hit by the red car. Prior to trial, Fisher's attorney had moved to suppress any in-court identification of Fisher by these witnesses. The state told the trial court that Ann-Marie Tonneman and Monica Swint might be able to make in-court identifications, and the court conducted a voir dire of those witnesses out of the presence of the jury in order to ascertain their testimony regarding identification. During the voir dire, Ann-Marie Tonneman testified that she could not identify the people in the car, and the court granted Fisher's motion to suppress an in-court identification by that witness.
Monica Swint testified in the voir dire that she was standing in the parking lot when the red car drove away. She did not see the occupants get into the car. She made eye contact with the driver as the car "flew by" her at a "high rate of speed." (Tr. at 286-287.) She admitted that, when she was interviewed on the day of the incident, she told the police that she "wasn't sure" if she could identify either of the people in the car. (Tr. at 287.) When asked in voir dire if she could identify the driver in court, Swint testified that "it looks like him." (Tr. at 287.) Following the voir dire, the trial court ruled as follows on the motion to suppress Swint's in-court identification:
 [Monica Swint] indicated that she did establish eye contact with the person in the car and he looked like the defendant, and I will allow her to say just that, that he looked like the defendant, which is not a positive identification. But she did indicate that for some period of time, not, you know, an extended period of time but for a period of time, she did establish eye contact. And I think that establishing an eye contact is a little bit different than watching somebody speed by in a car without and just looking at a profile, so I will allow her to testify. [Tr. at 298.]
At trial, Monica Swint testified that she was standing in the parking lot when the car that struck Furlong was "speeding out of the parking lot." (Tr. at 373.) She stated that she had to step backwards to avoid being hit by the car and, as she did, she made eye contact with the driver. She testified that the driver was in her view for "a couple seconds." (Tr. at 391.) She pointed to Fisher and testified that he was the driver of the red car. As to the certainty of her identification, Swint testified that she was "pretty certain" that Fisher was the man. (Tr. at 373.)
When considering an appeal from a trial court's decision on a motion to suppress evidence, we are presented with a mixed question of law and fact. State v. Long (1998), 127 Ohio App.3d 328, 332. On a hearing on a motion to suppress, the trial court acts as the trier of fact and is in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Brooks (1996), 75 Ohio St.3d 148,154. On review, therefore, we must defer to the trial court's findings of fact as long as they are supported by competent, credible evidence.State v. Medcalf (1996), 111 Ohio App.3d 142, 145; State v. Guysinger
(1993), 86 Ohio App.3d 592, 594. We must then determine, using a denovo standard of review, whether the trial court reached the correct legal conclusion in applying the facts of the case. State v. Venham
(1994), 96 Ohio App.3d 649, 653.
The Fifth and Fourteenth Amendments to the United States Constitution prohibit the admission of unreliable identification testimony derived from suggestive identification procedures. In the context of eyewitness identification testimony, "[i]t is the likelihood of misidentification which violates a defendant's right to due process[.]" Neil v. Biggers
(1972), 409 U.S. 188, 198. "Convictions based on eyewitness identification will be set aside only if the identification procedure was `so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" State v. Butler (1994),97 Ohio App.3d 322, 325.
The parties argue on appeal about whether the in-court identification in this case was impermissibly suggestive. We need not reach that issue, however, because we hold that Swint's testimony was sufficiently reliable and properly admitted. Swint testified that she made eye contact with the driver at close range. Moreover, she never stated that she was positive that Fisher was the driver. The alleged suggestiveness of Swint's testimony that she was "pretty certain" that Fisher was the driver goes to the weight of the testimony rather than its admissibility. See State v. Brown (1988), 38 Ohio St.3d 305, 311.
Furthermore, "any prejudicial effect of the testimony could have been cured by effective cross-examination." Id. at 311. The record demonstrates that Fisher's attorney conducted a meaningful cross-examination, soliciting an admission from Swint that, on the day of the incident, she had told the police that she was unable to identify or describe the driver. She also admitted on cross-examination that Fisher merely "could look like the man." (Tr. at 392.)
Under these circumstances, the trial court properly admitted Swint's testimony. Fisher's fifth assignment of error is overruled.
In his second and third assignments of error, Fisher contends that the court erred in admitting "other acts" testimony.
Fisher first argues that the trial court erred in admitting testimony from pawn broker Lark Parker that Fisher had sold jewelry and coins to Parker on four occasions in the month prior to the crimes at issue. Fisher argues that this "other acts" evidence improperly allowed the jury to infer that Fisher had a propensity to steal jewelry. In response, the state contends that the evidence was properly admitted to show: (1) that Fisher frequently associated with another white male and, therefore, had the opportunity to commit the burglary with another white male; (2) that Fisher had an economic motive for burglary because he had previously received cash for jewelry; and (3) that Fisher had a plan for disposing and profiting from the burglary.
Fisher also argues that the court erred in admitting the testimony of Arnold Broyles, the security guard who discovered Fisher and Snelling in a garage at the Olentangy Village apartment complex. Fisher argues that Broyles' testimony improperly invited the jury to infer that Fisher had a propensity for burglary. The state contends that the evidence was properly admitted to show: (1) that Fisher was associated with Snelling less than two days before the burglary of Furlong's home; (2) that Fisher had an opportunity to conspire with another white male to commit the Furlong burglary; and (3) that Fisher had the motive and opportunity to steal Senser's red Cavalier, since Fisher was found lurking by a car in an Olentangy Village apartment complex garage, less than a mile from the place from which the red Cavalier was stolen.
Under the Ohio Rules of Evidence, extrinsic acts generally may not be used to prove that the accused has a propensity to break the law. They may, however, be admissible for other purposes. Evid.R. 404(B) provides:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
To be relevant and, therefore, admissible, the "other act" testimony must tend "to make the existence of any fact * * * more probable or less probable[.]" Evid.R. 401. Even if other act evidence is relevant, however, it must be excluded under Evid.R. 403(A) "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." The standard of review for a ruling on a motion to exclude other act evidence is abuse of discretion. Renfro v. Black (1990), 52 Ohio St.3d 27, 32; State v.Rahman (1986), 23 Ohio St.3d 146, 152. We will affirm the trial court's ruling absent a showing that the trial court acted unreasonably, arbitrarily or unconscionably. State v. Apanovitch (1987),33 Ohio St.3d 19, 22.
In this case, we conclude that the trial court abused its discretion in admitting into evidence the testimony of Parker. We are unpersuaded that Fisher's prior sales to a pawn broker are relevant to any of the elements of the crimes at issue. Parker's testimony would only possibly tend to prove motive or plan for burglary if the jury believed that Fisher stole the goods that he sold Parker in the past, and this is the precise type of evidence that Evid.R. 404(B) prohibits. Even if it were relevant, the testimony's probative value was outweighed by its unfair prejudice to Fisher.
We also conclude that the trial court abused its discretion in admitting Broyles' testimony. Again, Broyles' testimony would only tend to prove motive to steal Senser's Cavalier if the jury believed that Fisher was trying to steal a car at the Olentangy Village complex, and Evid.R. 404(B) was designed to exclude such other acts testimony. Appellant was never charged with stealing the Cavalier. As to the state's argument as to opportunity, we conclude that any probative value of evidence placing Fisher about a mile from the Cavalier hours before the theft was discovered is outweighed by the unfair prejudice to Fisher from Broyles' testimony.
Accordingly, Fisher's second and third assignments of error are sustained.
In his first assignment of error, Fisher contends that his guilty verdicts were not supported by sufficient evidence and were against the manifest weight of the evidence. He further argues that the trial court erred in denying his motion for judgment of acquittal under Crim.R. 29.
The Ohio Supreme Court outlined the role of an appellate court presented with a sufficiency of evidence argument in State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime proven beyond a reasonable doubt. * * *
See, also, Jackson v. Virginia (1979), 443 U.S. 307, 319. This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172, 175. Rather, the sufficiency of evidence test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, at 319. Accordingly, the weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. State v. Thomas (1982), 70 Ohio St.2d 79, 80. We employ the same standard of review for an argument for acquittal under Crim.R. 29. See State v. Bezak (Feb. 18, 1998), Summit App. No. 18533, unreported (there is "no difference between the standard of review for a challenge to the sufficiency of the evidence and that for a motion for acquittal under Crim.R. 29[A]).
In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 387. The appellate court, however, must bear in mind the trier of fact's superior, first-hand perspective in judging the demeanor and credibility of witnesses. See State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
We conclude that the record contains sufficient evidence to support Fisher's conviction and that the conviction is not against the manifest weight of the evidence. Even without the testimony of Parker and Broyles, the state provided sufficient evidence connecting Fisher to these crimes, including: (1) Ann-Marie Tonneman's testimony that a white man in his twenties got into the driver's side of the red car; (2) Ann-Marie Tonneman's testimony that a plaid tan winter coat that belonged to Fisher looked similar to the winter coat worn by the driver; (3) Monica Swint's testimony that she was "pretty certain" that Fisher was the driver of the red car; and (4) the fact that the police found Jodi Senser's red Cavalier three hundred fifty-five paces from Fisher's half-brother's residence. When viewed in the light most favorable to the prosecution, this evidence is sufficient as a matter of law to convince a rational trier of fact of Fisher's guilt beyond a reasonable doubt. We therefore overrule Fisher's first assignment of error.
Given our disposition of Fisher's first, second, third and fifth assignments of error, Fisher's fourth and sixth assignments of error are overruled as moot. See App.R. 12(A)(1)(c).
For the foregoing reasons, the judgment of the Franklin County Court of Common Pleas is reversed and this cause is remanded for a new trial consistent with this decision.
LAZARUS and McCORMAC, JJ., concur.
 McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Snelling was indicted as Fisher's co-defendant, but his case was severed for trial.