DECISION
{¶ 1} Defendant-appellant Marko Penn asks this court to reverse his conviction for possession of cocaine. We affirm.
 {¶ 2} In April 2002, police officers received a radio call stating that a man had allegedly assaulted a woman. The call also indicated that the man possessed illegal drugs. Two officers approached the reported intersection and saw Penn, who matched the description from the radio call. As they approached him, Penn began to walk away from them and threw a brown object to the ground. The officers stopped Penn, questioned him, and recovered the discarded brown object, which turned out to be a paper bag or towel containing crack cocaine.
 {¶ 3} Penn was arrested and charged with possession of cocaine, a third-degree felony. His first trial ended in a hung jury, but his second trial resulted in a conviction. The trial court sentenced Penn to four years' imprisonment.
 {¶ 4} On appeal, Penn assigns three errors: (1) the trial court improperly allowed the prosecution to make prejudicial closing remarks; (2) he was denied effective assistance of counsel; and (3) the conviction was against the manifest weight of the evidence.
 I. Closing Remarks {¶ 5} In his first assignment, Penn argues that the trial court should not have allowed the prosecution to make prejudicial remarks during its closing argument.
 {¶ 6} An important issue at trial was the credibility of Penn's arresting officers. They had testified that Penn matched the description they had received and that they had seen Penn throw the brown object on the ground. During closing, the prosecutor discussed the police officers' testimony and their credibility: "They were frank with you. They didn't exaggerate their testimony. * * * They have no reason to lie to you."
 {¶ 7} When explaining Penn's defense that the officers had not actually seen Penn throw the brown object or that it was not the same evidence that the lab had analyzed, the prosecutor compared Penn's arguments to "red herrings." The prosecutor also said, "They want you to sit there and look at those two reports and say that things weren't in there that the officers talked about. * * * They want to tell you that the officers couldn't remember the exact time."
 {¶ 8} The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether the remarks prejudicially affected substantial rights of the accused.[1] The prosecution is allowed considerable latitude in its closing remarks, in its comments on what the evidence shows, and in its references to any reasonable inferences.[2] But the prosecutor may not give his personal opinion regarding the defendant's guilt or witnesses' credibility,[3] nor may he denigrate defense counsel's tactics.[4] We must view the closing argument in its entirety when determining prejudice.[5] The improper conduct of the prosecutor at trial does not constitute prejudicial error unless the conduct deprived the defendant of a fair trial.[6]
 {¶ 9} Penn's trial counsel did not object to any of the prosecution's closing remarks. Penn has therefore waived all but plain error.[7] And prosecutorial misconduct constitutes plain error only if it is clear that the defendant would not have been convicted absent the improper comments.[8]
 {¶ 10} Had Penn's trial counsel objected to the prosecution's statements regarding the officers' frankness, the objection should have been sustained. The comments were improper. But counsel did not object. And even if the statements rose to the level of error, it is not clear from the record that Penn would not have been convicted absent the improper comments. We therefore cannot say that the prosecutor's remarks denied Penn a fair trial.
 {¶ 11} We therefore overrule Penn's first assignment of error.
 II. Ineffective Assistance of Counsel {¶ 12} In his second assignment, Penn argues that he was denied the effective assistance of counsel. He now alleges that his trial counsel failed to perform six specific actions: (1) object to leading questions and hearsay testimony; (2) request separation of witnesses; (3) object to the prosecution's improper closing argument; (4) move for acquittal; (5) request a jury instruction concerning Penn's Fifth Amendment rights; and (6) request a polling of the jury.
 {¶ 13} To establish ineffective assistance, the defendant must prove that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) the substandard performance actually prejudiced the defendant.[9] We must indulge in a strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance.[10] Trial counsel's performance will not be deemed ineffective unless counsel's representation fell below an objective standard of reasonableness[11] and there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different.[12]
 {¶ 14} Penn has failed to demonstrate how his trial counsel's failure to ask for a separation of witnesses or a polling of the jury prejudiced Penn. We find no evidence in the record to suggest that a separation of witnesses or a polling of the jury would have changed the outcome of the trial.
 {¶ 15} Nor was Penn prejudiced by his trial counsel's failure to object to the prosecution's introduction of hearsay evidence or its use of leading questions. The "hearsay" testimony that Penn complains of on appeal involved the identifying information that the officers received from the dispatcher. But this testimony merely showed why the officers recognized Penn as their suspect — it was not offered to prove that Penn had assaulted his girlfriend or was selling drugs or to prove what he was wearing. Penn also points to several examples in the record that may have involved leading questions. But a reasonable attorney may decide as a matter of trial strategy not to interrupt his adversary's argument as a matter of strategy.[13] Further, trial counsel's decision not object at closing argument is often a reasonable tactical choice.[14]
 {¶ 16} On the record before us, we cannot say that the alleged hearsay or the leading questions rendered the prosecutor's closing argument so prejudicial that Penn would not in their absence have been convicted.
 {¶ 17} Penn's argument concerning his counsel's failure to move for acquittal is also without merit. A court must grant a motion for an acquittal only where the evidence is insufficient to support a conviction for the offense.[15] This entails an inquiry into whether any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt, when viewing the evidence in the light most favorable to the prosecution.[16] Applying this standard, we note that the record shows that the police officers saw Penn throw a brown object on the ground, and that object contained cocaine. Upon this evidence, reasonable minds could therefore have found Penn guilty of possession of cocaine. Penn was, therefore, not prejudiced by his trial counsel's failure to move for an acquittal in light of the evidence linking Penn directly to the crime.[17]
 {¶ 18} Penn's claim that his trial counsel should have requested a jury instruction regarding Penn's refusal to testify also fails. Even though a court must give such an instruction upon proper request, there is no constitutional requirement that such an instruction be given in every criminal case.[18]
Although Penn would have been entitled to the jury instruction had his trial counsel requested it, Penn has failed to show how the failure to request such an instruction prejudiced him.
 {¶ 19} Upon a determination that Penn was not prejudiced by the alleged omissions of his trial counsel, we overrule his second assignment of error.
 III. Manifest Weight of the Evidence {¶ 20} In his third assignment, Penn argues that his conviction was against the manifest weight of the evidence.
 {¶ 21} A review of the manifest weight of the evidence puts the appellate court in the role of a "thirteenth juror."[19] The court must weigh the evidence, consider the credibility of witnesses, and determine whether the trier of fact lost its way and created a manifest miscarriage of justice in finding the defendant guilty. A new trial should be granted on the weight of the evidence only in exceptional cases.[20]
And "[n]o judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the case."[21]
 {¶ 22} The jury found Penn guilty of possession under R.C.2925.11(A), which makes it a crime to "knowingly obtain, possess, or use a controlled substance." Penn now argues that the discrepancies in the testimony and the evidence show that the jury lost its way in finding him guilty.
 {¶ 23} Penn first points to the conflict in the clothing descriptions in the officers' testimony. In some places, the officers testified that the suspect was wearing a black jacket with yellow trim and blue jeans; in others, they stated that he was wearing black jeans or gray sweat clothes. There was a similar discrepancy in the police reports. But after reviewing the evidence and considering the credibility of the witnesses, we cannot say that the jury's guilty verdict in the face of these minor discrepancies demonstrates that the jury lost its way, or that its verdict amounted to a manifest miscarriage of justice.
 {¶ 24} Penn also argues that there were inconsistencies regarding the actual weight of the drugs. The laboratory report stated that the evidence obtained from the scene weighed 5.24 grams. But the police report stated that the evidence weighed 10.35 grams. Penn now argues that this discrepancy showed a break in the chain of evidence, and proved that the crack cocaine analyzed in the lab report was not the same substance that the police had recovered at the scene. But the lab report identified the substance as that associated with Penn's case. And the envelope that contained the crack cocaine bore the same file number that was listed on the lab report. The same envelope actually listed the weight of the drugs as 10.35 grams, even though the lab report later stated it was only 5.24 grams. We cannot say that the discrepancy in weight was enough to demonstrate that the jury lost its way or created a manifest miscarriage of justice in finding Penn guilty.
 {¶ 25} We therefore hold that the jury's verdict was not contrary to the manifest weight of the evidence, and we overrule Penn's third assignment of error.
 {¶ 26} Accordingly, we affirm the trial court's judgment.
Judgment affirmed.
Winkler, P.J., and Sundermann, J., concur.
[1] State v. Lott (1990), 51 Ohio St.3d 160, 555 N.E.2d 293.
[2] Id.
[3] State v. Smith (1984), 14 Ohio St.3d 13, 470 N.E.2d 883.
[4] State v. Hart (1994), 94 Ohio App.3d 665,641 N.E.2d 755.
[5] State v. Hill, 75 Ohio St.3d 195, 1996-Ohio-222,661 N.E.2d 1068.
[6] State v. Keenan (1993), 66 Ohio St.3d 402,613 N.E.2d 203.
[7] See State v. Green, 90 Ohio St.3d 352, 2000-Ohio-182,738 N.E.2d 1208.
[8] State v. Kelly, 1st Dist. No. C-010639, 2002-Ohio-6246.
[9] Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052.
[10] Id.
[11] Id.
[12] State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373.
[13] See State v. Peoples, 10th Dist. No. 02AP-945, 2003-Ohio-4680.
[14] State v. Williams, 99 Ohio St.3d 493, 2003-Ohio-4396,794 N.E.2d 27.
[15] Crim.R. 29(A).
[16] State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492.
[17] See State v. Mills (1991), 73 Ohio App.3d 27,595 N.E.2d 1045.
[18] See State v. Fanning (1982), 1 Ohio St.3d 19,437 N.E.2d 583, citing Carter v. Kentucky (1981), 450 U.S. 288,101 S.Ct. 1112.
[19] State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541.
[20] Id., citing State v. Martin (1983), 20 Ohio App.3d 172,485 N.E.2d 717.
[21] Section 3(B)(3), Article IV, Ohio Constitution.