**The STATE of Ohio, Appellee,**

v.

**LAIRD, Appellant**

[Cite as *State v. Laird* (1989), 65 Ohio App.3d 113.]

Court of Appeals of Ohio,
Sandusky County.

No. 5–88–27.

Decided Oct. 20, 1989.

*John E. Meyers*, Prosecuting Attorney, for appellee.

*Jerry Semer*, for appellant.

ABOOD, Judge.

This is an appeal of a judgment of conviction in the Sandusky County Court of Common Pleas following a jury verdict of guilty on one count of aggravated murder in violation of R.C. 2903.01(A).

Defendant-appellant, Mary A. Laird, sets forth four assignments of error:

"I. The Court erred when it allowed the prosecutor to introduce co-defendant confession through the testimony of Randy Walker.

"II. The jury's finding of guilty on Count One of the Indictment was unsupported by the record and against the manifest weight of the evidence.

"III. The Court erred when it allowed William Wilson to testify concerning the percentage of the population for certain blood type and when it allowed Exhibit 29 to be introduced.

"IV. The Trial Court committed error prejudicial to the appellant by continuing the trial with an alternate juror over the objection of the appellant where the original juror's absence was not due to any incapacity or other inability on the part of the juror."

The undisputed facts giving rise to this appeal are as follows.   * * *∎

In her first assignment of error appellant Laird asserts that the trial court erred in allowing the introduction of codefendant Robles' confession through the testimony of prosecution witness Randy Walker.   Appellant argues essentially that certain statements admitted through Walker's testimony, when considered with the other evidence introduced at trial, constituted direct references to her having committed the murder of Stout and, therefore, their admission was in violation of *Bruton v. United States* (1968), 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476.

In *Bruton,* the United States Supreme Court held that the admission at a joint trial of a codefendant's confession that implicates the other defendant, when the codefendant fails to take the stand, violates the other defendant's Sixth Amendment Right to confrontation.   *Id.* at 126, 88 S.Ct. at 1622–1623, 20 L.Ed.2d at 479.   The *Bruton* court found that such admission constituted prejudicial error despite the fact that the trial court gave limiting instructions to the jury that the codefendant's confession could only be used against that codefendant and must be disregarded as to the other defendant.   *Id.* at 126–128, 88 S.Ct. at 1622–1624, 20 L.Ed.2d at 479–481.   The *Bruton* court reasoned that in situations such as this, which involve powerfully incriminating extrajudicial statements of codefendants of highly questionable credibility and reliability, the risks that the jury would not or could not follow even the clearest of jury instructions is so substantial that it could not accept limiting instructions as an adequate substitute for the other defendant's right to

confrontation and cross-examination. *Id.* at 136–137, 88 S.Ct. at 1628–1629, 20 L.Ed.2d at 485–486.

In *State v. Moritz* (1980), 63 Ohio St.2d 150, 17 O.O.3d 92, 407 N.E.2d 1268, the Supreme Court of Ohio found the admission of certain extrajudicial statements made by a nontestifying codefendant to be a violation of *Bruton,* even though the statements alone were not altogether clear, but, when taken in context with other testimony and the totality of the evidence, were determined to be sufficient to inculpate the other defendant. *Id.* at 153, 17 O.O.3d at 94, 407 N.E.2d at 1271. The *Moritz* court determined that the rule espoused in *Bruton, supra,* should be applied equally to all statements that tend to significantly incriminate a codefendant, whether or not that defendant is actually named in the statement.[2]

In *Richardson v. Marsh* (1987), 481 U.S. 200, 211, 107 S.Ct. 1703, 1709, 95 L.Ed.2d 176, 188, however, the United States Supreme Court expressly declined to extend the protection of *Bruton* as far as the Supreme Court of Ohio did in *Moritz, supra,* holding:

" * * * [T]he Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence."

In so holding, the *Richardson* court noted an important distinction between the circumstances existing therein and those of *Bruton,* which placed the *Richardson* case outside the narrow exception created in *Bruton* to the general assumption that a jury follows its instructions:

"In *Bruton,* the codefendant's confession 'expressly implicat[ed]' the defendant as his accomplice. * * * Thus, at the time that confession was introduced there was not the slightest doubt that it would prove 'powerfully incriminating.' * * * By contrast, in this case the confession was not incriminating on its face, and became so only when linked with evidence introduced later at trial (the defendant's own testimony)." (Citations and footnotes omitted.) *Id.* at 208, 107 S.Ct. at 1707, 95 L.Ed.2d at 186.

The *Richardson* court reasoned that in these circumstances, where the contested confession is not incriminating on its face, but is only so when linked with other testimony at trial, there does not exist the overwhelming probability that the jurors will be unable to follow the court's limiting instructions to disregard the incriminating statements as to the other defen-

---

2. The *Moritz* court went on to find in that case, however, that the error in admitting the contested statement was harmless beyond a reasonable doubt due to sufficient independent evidence, properly admitted, of that defendant's guilt.

dant. *Id.* at 211, 107 S.Ct. at 1708, 95 L.Ed.2d at 188. The statements in this case which appellant objected to at trial on the basis of *Bruton* are as follows:

"Q. Let me rephrase that. Did Robles tell you about Stout's death?

"A. Yes.

"Q. Did Robles tell you whether he was personally present when Stout was murdered?

"A. Yes.

"Q. What did he say?

"A. That he was present.

" * * *

"Q. Did he tell you anything about the abilities of his family?

"A. Yes.

"Q. What would that be?

"A. That they had a lot of money, and that if need be he could—they could pay their next door—his next door neighbor to tell the authorities that he was carried into his house the night that—

"Q. That who was? You're using a pronoun.

"A. Bob was carried into his house.

"Q. Was carried in?

"A. Yes.

"Q. In what condition?

"A. Passed out.

"Q. Did he tell you anything else about the ability of his family?

"A. Yes. That if anybody testified that they could have them taken care of.

"Q. If anybody testified against him they'd be taken care of?

"A. Yes."

None of Robles' statements testified to by the witness contained any direct reference to appellant Laird or her existence. Rather, as appellant herself argues, it is only when these statements are considered in context with all the other evidence at trial that they become potentially incriminating. The trial court gave clear instructions to the jury that any statement made by one defendant outside the presence of the other defendant would be admissible only as to the defendant making the statement, and could not be considered for any purpose as evidence against the other defendant. Given the context of the contested statement and the limiting instructions to the jury, this court

finds that *Bruton, supra,* is not applicable herein and that appellant Laird's Sixth Amendment right of confrontation has not been violated by the admission of the above testimony. Accordingly, appellant's first assignment of error is found not well taken.

\* \* \*■

Considering, finally, appellant's second assignment of error, wherein she challenges the jury's verdict as being against the manifest weight of the evidence, the court finds that due to its disposition of appellant's third assignment of error, this assignment of error is rendered moot and is therefore found not well taken.

On consideration whereof, the court finds that the defendant was prejudiced and prevented from having a fair trial, and the judgment of the Sandusky County Court of Common Pleas is therefore reversed. This cause is remanded to that court for a new trial. It is ordered that appellee pay the court costs of this appeal.

*Judgment reversed.*

HANDWORK, P.J., and GLASSER, J., concur.