OPINION
{¶ 1} Defendant-appellant, Tinnissha L. Wilkerson, appeals from a judgment of the Franklin County Court of Common Pleas finding her guilty of one count of aggravated burglary, two counts of aggravated robbery, and four counts of robbery, all with firearm specifications, arising out of the June 3, 2001 burglary and robbery of Sofia Butcher and Tina Prout at a Motel 6 in Columbus.
{¶ 2} According to state's evidence, West Virginia residents Ruth Lemaster, Sofia Butcher, and Tina Prout, arrived in Columbus on June 2, 2001 and stayed at the Motel 6 on Dublin-Granville Road. After midnight that evening, the three women went to a nearby Meijer store on Cleveland Avenue to pick up some needed items. The women testified that two black men, one approximately six feet tall with braided hair and the other shorter with Afro-style hair, followed the women throughout the store while they shopped, talked to the women for several minutes, and stood directly behind them in the checkout lane. The men followed the women back to the Motel 6 and, as the women entered the motel room, forced their way into the women's room. Despite the women's request that they leave, the men stayed for approximately ten minutes, leaving only when Lemaster's boyfriend arrived. The lighting in the motel room was bright, and at trial all three women positively identified co-defendant Raashawn Reynolds as one of the men who followed them in the Meijer store and forced his way into their motel room.
{¶ 3} The next evening at approximately eleven o'clock, Sofia Butcher answered a knock at the motel door, believing it to be Lemaster returning from a date with her boyfriend. Tina Prout had just stepped out of the shower. When Butcher opened the door, a black man wearing a covering on his head and a bandanna over his mouth and nose entered the room. He pointed a gun at Butcher's head, grabbed her by the throat, threw her over a bed, and demanded money or the women would be killed. Butcher testified at trial that during the incident she recognized the perpetrator as Reynolds from the previous night, based on his eyes and voice. Butcher and Prout positively identified Reynolds at trial as the perpetrator who grabbed Butcher.
{¶ 4} Butcher and Prout testified that a black female carrying a gun followed Reynolds into the motel room, grabbed Prout and "slung" her around the room, demanding the women's money. The women described the female perpetrator as having braided hair, and wearing black clothing, gloves, a hat, and a mask. Prout testified that as the female perpetrator straddled her on top of a bed, Prout looked directly up and paid attention to her face. The female perpetrator repeatedly struck Prout's head with a telephone. At trial, both Prout and Butcher positively identified defendant as the female perpetrator, with Prout testifying that on a scale of one to ten her certainty level was a "ten."
{¶ 5} The women testified that a third perpetrator also came into their motel room with defendant and Reynolds, but they were unable to positively identify the third person, other than to describe him as a black male with frizzy hair who was wearing a blue bandana. The three perpetrators left after taking the victims' money, and the women immediately called the motel office to report the incident.
{¶ 6} An off-duty police officer working at the motel at the time of the robbery responded to the call and obtained a description of the perpetrators. Around the time of the robbery, the officer had observed a blue four-door full-size vehicle with at least three black occupants drive away from the motel; the officer had noted the vehicle was not registered at the motel. Based on the victims' descriptions and his observation of the vehicle and its occupants, the officer called in a report of two black males and one black female possibly driving a blue vehicle. In approximately 30 minutes, the police apprehended four possible suspects who were in a blue four-door Bonneville registered in defendant's name. In the area in which the suspects were apprehended, the police also found masks, bandannas, hats, guns, and gloves matching the victims' description of the perpetrators' items; the victims positively identified the retrieved items at trial as having been worn or carried by the perpetrators during the robbery.
{¶ 7} Approximately one hour after the robbery, the three women attended a "show-up" of the four suspects at the scene where the suspects were apprehended. The suspects were shown one at a time to the women, who stood approximately two car lengths' away and observed the suspects under street lights and with a police car light focused on the suspects. The two victims immediately and positively identified defendant and Reynolds as having participated in the robbery that night. All three women also identified Reynolds as one of the persons who followed them at Meijer and entered their motel room the previous night. The off-duty police officer who worked at the Motel 6 that night also attended the show-up and testified at trial that the blue Bonneville looked like the same car he observed at the motel around the time of the robbery. Defendant and Reynolds were arrested and charged, and a joint trial was set for the two defendants.
{¶ 8} On July 18, 2001, defense counsel filed a motion for relief from prejudicial joinder to sever defendant's trial from that of her co-defendant Reynolds. Asserting that severance was warranted under Bruton v. United States (1968), 391 U.S. 123, 88 S.Ct. 1620, defendant contended that "[s]hould a non-testifying Co-Defendant statement be used by the State of Ohio in its case in chief, said statement being indicative of Defendant Wilkerson's guilt and/or inconsistent with her theory of innocence, Defendant Wilkerson would be prejudiced in that her Counsel would not be able to test the non-testifying Co-Defendant's statement through cross-examination." (Defendant's memorandum in support of motion for relief from prejudicial joinder.)
{¶ 9} In response to defendant's severance motion, the prosecution filed a memorandum contra, with attached summaries of the statements defendant and Reynolds gave to the police following their arrest. According to the summary of defendant's statement, defendant admitted taking part in the robbery of the victims at the Motel 6, and she directly implicated Reynolds and another individual in the robbery. The summary of Reynolds' statement stated as follows:
{¶ 10} "He denied taking part in the robbery. He stated that he met his sister (Wilkerson) and Smith at the laundrymat around 8:00 P.M. Wilkerson and Smith left stating that they were going to pick up a friend and get some more money so they could get some more weed. Reynolds went home, made some phone calls looking for some weed, then took a nap. Wilkerson called him after 11:00 P.M. stating that she knew where to get some weed. She then came over with Smith and the three started to drive over to Karl Road to get the weed. Terry called them and wanted them to pick him up at Reynolds house so they turned around, picked Terry up, and drove back to Karl Road. The police spotted them before they could get the weed. He jumped in the bushes when Smith ran. He denied being in the victim's room the night before."
{¶ 11} In its memorandum contra, the prosecution stated that "[a]t the Court's request, the prosecuting attorney will make available to the Court copies of the audio tape from which these summaries were derived." (State's Memorandum Contra Defendant's Motion for Severance.) The record does not reflect whether the trial court requested copies of the audio tape, but the trial court subsequently denied defendant's severance motion "after full and careful consideration." (Aug. 24, 2001 Decision and Entry.)
{¶ 12} Neither defendant nor Reynolds testified at trial, and defendant's inculpatory statement was not presented into evidence. However, Columbus Police Detective Edward Cox testified regarding the statements co-defendant Reynolds made to him during an interview the day after the robbery. Cox testified that Reynolds denied any direct involvement in the robbery but admitted he was aware of the robbery and had given a mask and a bandanna to "some people" prior to the robbery. (Tr. Vol. III, 8-9.) A portion of Reynold's taped statement to Cox was then played for the jury:
{¶ 13} "[DEFENDANT]: I was not there but I do know about the robbery. Came to my house and got the stuff.
{¶ 14} "[DETECTIVE EDWARD COX]: Got what stuff?
{¶ 15} "[DEFENDANT]: The mask and the bandanna and everything. They had told me about the robbery before they left my house. They told me everything went down. That's how the mask was still in the car. That's how I had the mask but the mask, the bandannas I gave them, the mask and the bandannas (inaudible). Yeah, an automatic high point." (Tr. Vol. III, 10.)
{¶ 16} The jury convicted both defendants as charged. Defendant appeals, assigning the following errors:
{¶ 17} "First Assignment of Error
{¶ 18} "The trial court erred to the prejudice of appellant when it failed to comply with Crim.R. 14 which mandates: the court shall order the prosecuting attorney to deliver to the court for inspection pursuant to Rule 16(B)(1)(a) any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial.
{¶ 19} "Second Assignment of Error
{¶ 20} "Defendant-appellant was denied a fair trial when the prosecutor engaged in misconduct which prejudiced appellant because the prosecutor: (1) failed to comply with Crim.R. 14 (relief from prejudicial joinder) requirement that he provide to the trial court any statements or confessions made by the defendants which the state intends to introduce in evidence at trial by not providing to the court the tape-recorded statement-confession of co-defendant Reynolds, and (2) presented a tape-recorded confession statement of co-defendant Reynolds to the jurors although the confession statement was never presented to the court for it to rule on appellant's motion for relief from prejudicial joinder and the `summary' of the statement of co-defendant Reynolds presented to the trial court was different in content from the statement confession presented to the jurors and trial court during the trial.
{¶ 21} "Third Assignment of Error
{¶ 22} "Defendant-appellant was denied a fair trial because the trial court denied her motion for relief from prejudicial joinder.
{¶ 23} "Fourth Assignment of Error
{¶ 24} "Appellant was denied her right of due process and a fair trial under U.S. Const. Amend. V and XIV and Ohio Const. Art. I, Section16 when the trial court committed reversible error and plain error when it did not give the jury sua sponte limiting instructions that (1) the confession statement of co-defendant Reynolds was only to be considered in the case against co-defendant Reynolds and that (2) the confession statement of co-defendant Reynolds was not to be considered by the jury in the case against appellant.
{¶ 25} "Fifth Assignment of Error
{¶ 26} "Appellant Tinnissha Wilkerson was denied her constitutional right to confront witnesses when she was prohibited from questioning codefendant Reynolds about the statement confession he gave to the police since codefendant Reynolds exercised his right against self incrimination and did not testify at trial.
{¶ 27} "Sixth Assignment of Error
{¶ 28} "Defendant-appellant Tinnissha Wilkerson was denied the effective assistance of counsel when counsel: (1) failed to file a meritorious motion to suppress the identification of appellant derived from an illegal `show-up' identification; (2) failed to request a jury instruction instructing the jurors to consider the statement/confession of codefendant Reynolds only in the case against codefendant Reynolds; and (3) failed to request the Telfaire jury instruction."
{¶ 29} All of defendant's assignments of error challenge the joinder of the defendants' trial. Crim.R. 8(B) permits joinder of trial if two or more defendants are alleged to have participated in the same act or transaction or in the same course of criminal conduct. "Joinder of defendants and the avoidance of multiple trials is favored in the law [because it] * * * conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries." State v. Thomas (1980),61 Ohio St.2d 223, 225. See, also, Richardson v. Marsh (1987),481 U.S. 200, 209-210, 107 S.Ct. 1702, 1708-1709 (stating that joint trials serve the interest of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability).
{¶ 30} Relief from prejudicial joinder may be obtained pursuant to Crim.R. 14, which provides, in pertinent part:
{¶ 31} "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. In ruling on a motion by a defendant for severance, the court shall order the prosecuting attorney to deliver to the court for inspection pursuant to Rule 16(B)(1)(a) any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial."
{¶ 32} Defendant's first assignment of error asserts the trial court erred in failing to comply with the requirement of Crim.R. 14 that "the court shall order" the prosecution to submit for the court's inspection the "statements or confessions" of the co-defendant, here, Raashawn Reynolds. Defendant contends that pursuant to Crim.R. 14, the court was to inspect only the recording or transcription of Reynolds' statement to Detective Cox, not a summary of his statement. Defendant asserts that, due to the court's failure to request and review Reynolds' recorded statement, the court was unable to make an informed decision whether the co-defendants should be tried jointly because Reynolds' recorded statement played for the jury at trial differed from the summary given to the trial court before trial.
{¶ 33} In order to obtain a severance, defendant needed to affirmatively demonstrate prejudice by the joinder. Crim.R. 14; Thomas, supra; State v Torres (1981), 66 Ohio St.2d 340. In that regard, defendant was "required to furnish the trial court with sufficient information so that it [could] weigh the considerations favoring joinder of all co-defendants against those factors which preserve the defendant's right to a fair trial." State v. Wyche (Feb. 21, 1989), Franklin App. No. 87AP-878, appeal dismissed and rehearing denied, 43 Ohio St.2d 710,712.
{¶ 34} Notably, the record reflects that defendant did not object to the prosecution's submitting to the trial court a summary of Reynolds' statement, and did not formally request the trial court to review the audio tape of Reynolds' statement. In support of her severance motion, defendant presented only a general assertion of prejudice based upon her counsel's being unable to test, through cross-examination, a nontestifying co-defendant's statement indicative or her guilt and/or inconsistent with her theory of innocence. Although defendant acknowledged in her motion that she became aware through discovery that each defendant made statements to the police, defendant did not provide the trial court with any information regarding particular statements of Reynolds that incriminate defendant or compromise her theory of innocence. Nor did defendant assert that any prejudice resulting to her from the admission of such statements could not be alleviated with a limiting instruction or through redaction of the statements.
{¶ 35} In every trial where defendants are tried jointly there is a risk that information introduced against one of the co-defendants may "spill over" against the other defendant. Wyche, supra, citing United States v. Lotsch (C.A.2, 1939), 102 F.2d 35, 36, certiorari denied,307 U.S. 622, 59 S.Ct. 793. To the extent that defendant left it to the trial court to discover and determine what, if any, of Reynolds' statements implicated defendant and to what degree, defendant bore the risk the trial court would have insufficient information before it to weigh the specific factors favoring severance versus joinder. A trial court does not abuse its discretion in refusing to grant severance where the prejudicial aspects of joinder are too general and speculative. State v. Lundy (1987), 41 Ohio App.3d 163.
{¶ 36} Although defendant now claims prejudice because the summary the trial court reviewed differed from Reynolds' recorded statement presented at trial, our review reveals that neither facially incriminates defendant. Thus, defendant has not demonstrated that the trial court's consideration of the summary, rather than the tape recording of Reynolds' statement, prejudiced defendant, denied her a fair trial, or constituted other than harmless error. Accordingly, defendant's first assignment of error is overruled.
{¶ 37} Related is defendant's second assignment of error that asserts the prosecution engaged in misconduct because (1) the prosecution did not provide Reynolds' "statement" to the trial court for its inspection as required by Crim.R. 14, and (2) Reynolds' statement played for the jury at trial was different from the summary statement submitted to the court before trial for its ruling on defendant's severance motion.
{¶ 38} The test for prosecutorial misconduct is whether the prosecution's conduct was improper and, if so, whether the conduct prejudicially affected substantial rights of the accused. State v. Finkes (Mar. 28, 2002), Franklin App. No. 01AP-310, citing State v. Lott (1990), 51 Ohio St.3d 160, 165. " `[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.' Smith v. Phillips (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 947. As such, misconduct is not grounds for reversal unless the defendant has been denied a fair trial. State v. Maurer (1984), 15 Ohio St.3d 239, 266, certiorari denied (1985), 472 U.S. 1012." State v. Hairston (Sept. 28, 2001), Franklin App. No. 01AP-252, appeal not allowed (2002), 94 Ohio St.3d 1433.
{¶ 39} Defendant has not demonstrated that a substantial right of hers was prejudicially affected where the prosecution submitted a summary, rather than the recording, of Reynolds' statement for the court to consider in deciding defendant's severance motion. The prosecution did not fail to comply with an order of the court to provide the recorded statement of defendant. Indeed, the prosecution expressly offered to make a copy of the audio recording of defendant's statement available to the court upon its request, but the record does not reflect that any such request was ever made. Moreover, as we concluded above, defendant has not demonstrated that she was prejudiced by the prosecution's submitting to the trial court a summary, rather than the recording, of Reynolds' statement. Accordingly, defendant has not shown that the prosecution's conduct denied her a fair trial, and defendant's second assignment of error is overruled.
{¶ 40} Defendant's third, fourth, and fifth assignments of error assert defendant was prejudiced by the joinder of trial because damaging evidence concerning Reynolds, including his statement to Detective Cox, was presented in her case, but would have been inadmissible if defendant had been tried separately.
{¶ 41} Trial courts are given considerable latitude in determining whether a severance is warranted and we review their decisions for an abuse of discretion. State v. Johnson (Mar. 4, 1997), Franklin App. No. 96APA06-751, citing United States v. Reeves (C.A.8, 1982), 674 F.2d 739,744. To determine whether a trial court has abused its discretion, "[t]he test is `whether a joint trial is so manifestly prejudicial that the trial judge is required to exercise his or her discretion in only one way — by severing the trial. * * * A defendant must show clear, manifest and undue prejudice and violation of a substantive right resulting from failure to sever. * * * ' United States v. Castro [(C.A.9, 1989), 887 F.2d 988], 996; see, also, United States v. Lane (1986), 474 U.S. 438, for the proposition that misjoinder is not per se reversible error." Johnson, supra, quoting State v. Schiebel (1990),55 Ohio St.3d 71, 89.
{¶ 42} Defendant contends the trial court violated Bruton in admitting into evidence the statement of her co-defendant Reynolds because (1) defendant was unable to cross-examine Reynolds, who did not testify, regarding the statement, and (2) the trial court failed to sua sponte issue a limiting instruction that Reynolds' statement should not be used in determining defendant's guilt. Defendant asserts that, although defendant was not named in Reynolds' statement, the statement circumstantially implicated defendant and was so damaging and prejudicial that defendant was convicted of all the charges against her. According to defendant, the erroneous admission of Reynolds' statement was not harmless because the case against defendant was not overwhelming, but rather was a case where the jury's guilty verdicts concerning defendant were the product of the jury's determination of defendant's "guilt by association" with her co-defendant.
{¶ 43} In Bruton, the United States Supreme Court held that a defendant is deprived of the Sixth Amendment right of confrontation when a facially incriminating extrajudicial statement of a nontestifying co-defendant is introduced at their joint trial, despite a trial court's instruction to the jury to consider the statement only against the co-defendant. The Bruton rule applies even when, as here, the co-defendant's statement does not name the defendant specifically, but, when considered in context with all the other evidence presented at the trial, the statement significantly tends to incriminate the defendant. State v. Moritz (1980), 63 Ohio St.2d 150, 155; State v. Laird (1989),65 Ohio App.3d 113, appeal dismissed (1990), 49 Ohio St.3d 707. However, where the contested statement is not incriminating to a defendant on its face, but is only so when linked with other evidence at trial, a trial court's limiting instruction is enough to restrain the jury from considering the statement for a purpose that would violate the defendant's right to confrontation. Laird at 115-117, following Richardson v. Marsh (1987), 481 U.S. 200, 107 S.Ct. 1702. Moreover, even where the rule in Bruton has been violated, such "[a] violation of an accused's right to confrontation and cross-examination is not prejudicial where there is sufficient independent evidence of an accused's guilt to render improperly admitted statements harmless beyond a reasonable doubt." Moritz, paragraph two of the syllabus. See, also, Scheble v. Florida (1972), 405 U.S. 427, 430, 92 S.Ct. 1056, 1059.
{¶ 44} As an initial matter, the record does not reflect that defense counsel either requested a limiting instruction regarding the purposes for which the jury could consider co-defendant Reynolds' statement, or objected to the instructions the trial court gave to the jury. Had a limiting instruction been requested, defendant arguably would have been entitled to one under Evid.R. 105, which provides that "[w]hen evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request of a party, shall restrict the evidence to its proper scope and instruct the jury accordingly." (Emphasis added.) See, also, State v. Fox (1938), 133 Ohio St. 154, 160-161 (holding that when two persons are jointly tried on the defendant's objection to the admission of inculpatory statements made by the co-defendant, the court must instruct the jury that such statements can be considered only as against the one making them and not against the defendant).
{¶ 45} For purposes of our analysis, we assume the admission of co-defendant Reynolds' statement to Detective Cox violated the rule in Bruton, in part because the trial court failed sua sponte to issue a limiting instruction regarding the jury's proper consideration of the statement. Nevertheless, even assuming Bruton was violated, the admission of evidence concerning Reynolds, including Reynolds' statement to Detective Cox, did not unduly prejudice defendant because sufficient independent evidence of defendant's guilt rendered harmless an erroneous admission of evidence relating to Reynolds.
{¶ 46} The two victims positively and unequivocally identified defendant, both at the show-up and at trial, as one of the perpetrators who forced their way into the victims' motel room and robbed the victims. Defendant's appearance at the time of her apprehension matched the description the victims gave immediately following the incident. In the area in which defendant was apprehended, the police retrieved various items matching those the victims described and later identified at trial as having been worn or used by the perpetrators, specifically including items defendant wore or used during the robbery. Further, defendant's car matched the description of a suspicious vehicle observed to be at the Motel 6 around the time of the robbery.
{¶ 47} Because sufficient independent evidence supported defendant's guilt, defendant was not prejudiced or denied a fair trial by the joinder of trial with her co-defendant, even where the trial court failed to issue a limiting instruction regarding the admission of Reynolds' statement to the police. Accordingly, defendant's third, fourth, and fifth assignments of error are overruled.
{¶ 48} In her sixth assignment of error, defendant asserts she was denied the effective assistance of counsel because defense counsel (1) failed to request a limiting instruction regarding the purpose for which the jury could consider Reynolds' statement to Detective Cox, (2) failed to move to suppress the victims' identification of defendant at the "show-up," and (3) failed to request a [United States v.] Telfaire [(C.A.D.C. 1972), 469 F.2d 552, 558-559] instruction that cautions the jury regarding the potential unreliability of eyewitness testimony.
{¶ 49} In order to prevail on an ineffective assistance of counsel claim, a defendant must meet the two-prong test enunciated in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. Accord, State v. Bradley (1989), 42 Ohio St.3d 136, certiorari denied (1990), 497 U.S. 1011,110 S.Ct. 3258. Initially, defendant must show that counsel's performance was deficient. To meet that requirement, defendant must show counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Defendant may prove counsel's conduct was deficient by identifying acts or omissions that were not the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Strickland at 690.
{¶ 50} Next, if defendant successfully proves that counsel's assistance was ineffective, the second prong of the Strickland test requires defendant to prove prejudice in order to prevail. Id. at 692. To meet that prong, defendant must show counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result is reliable. Id. at 687. A defendant meets the standard with a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
{¶ 51} With regard to defendant's first claim of ineffective assistance of counsel, defendant was not denied a fair trial by defense counsel's failure to request a limiting instruction because, as we have concluded, the admission of evidence concerning Reynolds, including his statement to Detective Cox, did not unfairly prejudice defendant or deny her a fair trial, despite the lack of a limiting instruction.
{¶ 52} In her second ineffective assistance of counsel claim, defendant contends defense counsel was ineffective for failing to move to suppress the victims' identification of defendant at the "show-up" following their robbery. Defendant asserts the trial court would have suppressed evidence regarding the show-up identification if defense counsel had filed a suppression motion because the show-up identification procedure was unnecessarily suggestive of defendant's guilt, and the victims' identification of defendant was unreliable under the totality of the circumstances.
{¶ 53} A defense counsel's failure to file a suppression motion constitutes ineffective assistance of counsel only where the record establishes that the motion would have been successful if made and the defendant was prejudiced by the failure to file the motion. State v. Madrigal (2000), 87 Ohio St.3d 378, 389, certiorari denied, 531 U.S. 838,121 S.Ct. 99. State v. Procter (May 14, 2001), Warren App. No. CA2000-06-059.
{¶ 54} A "show-up" is inherently suggestive. See, e.g., Ohio v. Barnett (1990), 67 Ohio App.3d 760. However, the "admission of evidence of a showup without more does not violate due process." Neil v. Biggers (1972), 409 U.S. 188, 198, 93 S.Ct. 375. A defendant is entitled to the suppression of eyewitness identification of the defendant at a show-up only if the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. Id.; Simmons v. United States (1968), 390 U.S. 377, 384, 88 S.Ct. 967; State v. Madison (1980), 64 Ohio St.2d 322, 331; State v. Butler (1994),97 Ohio App.3d 322, 325, appeal dismissed (1995), 71 Ohio St.3d 1464. The factors to consider when "evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Neil at 199.
{¶ 55} Here, Tina Prout testified she had an opportunity to view the female robber at close range during the robbery as Prout lay on the bed and looked directly up into the robber's face. Prout stated she paid attention to the female perpetrator's face and could identify defendant by her eyes and nose that were not covered during the robbery. Immediately following the robbery, the victims gave the police an accurate description of defendant. Approximately one hour after the robbery, both Prout and Sofia Butcher positively identified defendant as the female who participated in the robbery. On a scale of one to ten, Prout testified she was positive at a level of "ten" of her identification of defendant as the female perpetrator.
{¶ 56} Although some evidence indicated defendant was maced as the police apprehended her, other evidence indicated mace does not affect some people's eyes and, even for those affected, the effect may wear off within 45 minutes. Defendant's suggestion on appeal, that the macing she received affected her eyes and rendered the victims' subsequent identification of her at the show-up unreliable, is purely speculative and without evidentiary support.
{¶ 57} Given Prout's opportunity to view defendant at close range during the robbery, the victims' accurate description of defendant, the short time between the commission of the robbery and the victims' identification of defendant, and the victims' high degree of certainty in their identification of defendant, we cannot say that the show-up identification procedure created a substantial likelihood of misidentification such that defense counsel's motion to suppress the victims' identification of defendant at the show-up would have been granted. Because the record does not establish that a suppression motion would have been granted, defendant has not established that she was denied the effective assistance of counsel due to counsel's failure to file a suppression motion.
{¶ 58} Finally, defendant claims defense counsel was ineffective for failing to request a jury instruction on eyewitness identification pursuant to Telfaire, Appendix: Model Special Instructions on Identification. The Telfaire model instruction cautions the jury that eyewitness testimony is potentially unreliable, and that the identity of the defendant as the perpetrator must be proven beyond a reasonable doubt. It further advises that, in appraising the identification testimony of a witness, the jury "should consider the capacity and opportunity of the witness to observe the defendant; the identification being or not being the product of the witness' own recollection, given the strength of the identification and the circumstances under which it was made; the inconsistent identifications that may have been made by the witness; and the general credibility of the witness." State v. Guster (1981), 66 Ohio St.2d 266, 268, fn. 1.
{¶ 59} Here, the trial court gave a special instruction to the jury on eyewitness identification that incorporated much of the Telfaire model instruction. The trial court instructed the jury that defendant's identity as the perpetrator of the crime must be proven beyond a reasonable doubt, and that the "value of the identification testimony depends upon the opportunity that the witness had to observe the offender at the time of the offense and to make a reliable identification later." (Tr. Vol. III, 105.) The court further instructed the jury that it should consider the capacity and opportunity the witness had to observe the offender and to make a reliable observation, taking into account the strength of the witness' identification and the circumstances under which the identification was made. The trial court also instructed the jury that it must consider the credibility of the witness and decide whether the witness is truthful. (Tr. Vol. III, 105-106.) Finally, the court instructed the jury that if, after examining the evidence, it had a reasonable doubt as to the accuracy of the identification, it must find the defendant not guilty. (Tr. Vol. III, 106.)
{¶ 60} The trial court appropriately instructed the jury upon the matter of eyewitness identification using a modified version of the Telfaire instruction. See Gunster at 271-273; State v. Smith (Mar. 30, 1995), Franklin App. No. 94APA08-1208; State v. Williams (Nov. 2, 1982), Franklin App. No. 82AP-379. Accordingly, defendant was not denied the effective assistance of counsel due to any failure of defense counsel to request a Telfaire instruction. Concluding that defendant did not receive ineffective assistance of counsel, we overrule defendant's sixth assignment of error.
{¶ 61} Having overruled defendant's six assignments of error, the judgment of the trial court is affirmed.
Judgment affirmed.
BOWMAN and GLASSER, JJ., concur.
GLASSER, J., retired, of the Sixth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.